Bettman, J.
 

 The record in this case was certified to this court because of conflict with the judgment of another Court of Appeals upon “questions of procedure pertaining to notice of appeals.” Such certification brings the entire case before this court.
 
 Pettibone
 
 v.
 
 McKinnon,
 
 125 Ohio St., 605, 183 N. E. 786;
 
 Chicago Ornamental Iron Co.
 
 v.
 
 Rook, Admr.,
 
 93 Ohio St., 152, 112 N. E., 589.
 

 Considering first, the procedural question here involved — the sufficiency of Couk and Spires’ notice of appeal — the applicable statute, Section 12223-5, General Code, provides:
 

 “The notice of appeal shall designate the order, judgment, or decree appealed from and whether
 
 the appeal shall be on questions of law or questions of law and fact. In said notice the party appealing shall be designated the appellant, and the adverse party, the appellee, and the style of the case shall be the same as in the court of origin. The failure to designate the type of hearing upon appeal shall not be jurisdictional and
 
 the notice of appeal may le amended ly the appellate court in the furtherance of justice for good cause shown.”
 
 (Italics ours.)
 

 The plaintiffs’ notice of appeal to the Court of Appeals in this case was, by its terms, “from a judgment rendered by the Municipal Court of Cleveland in the above-entitled case upon the opening statement of said appellants on the 13th day of November 1939.” The judgment so designated was, however, rendered on the
 
 14th
 
 of November 1939. The Court of Appeals permitted amendment of the notice of appeal to correct that error.
 

 Counsel for the defendant contend that the Court
 
 *115
 
 of Appeals had no power to permit an amendment or to hear the case, because the erroneous date in the notice of appeal was a jurisdictional defect, and as such could not be corrected by amendment. Referring to the clause in Section 12223-5, General Code, providing that “the failure to designate the type of hearing upon appeal shall not be jurisdictional,” the contention is made that “the statute, having expressly authorized amendment in one situation, must be deemed to have denied it in others.” This interpretation is claimed to be further supported by the fact that the provision stating that the designation of the type of hearing is not jurisdictional, and the provision in regard to amending the notice of appeal, are both contained in a single sentence. Such proximity, it is argued, shows the intention of the Legislature to limit the power of amendment to the one act of changing the designation of the type of hearing upon appeal. But the consequence of this urged construction of the statute would be to permit by amendment a major change, to wit, a change from an appeal on questions of law to one on questions of law and fact, and at the same time to prohibit absolutely a minor and perhaps purely formal modification.
 

 We
 
 are of the opinion that the construction of Section 12223-5, General Code, contended for is not sound. The statute is remedial in nature and should be liberally construed. Section 10214, General Code. Further it should be recalled that the section of the Code under consideration is part of the new Appellate Procedure Act (116 Ohio Laws, 104), the express purpose of which, as stated by the Legislature, was “to establish a simplified method of appellate review.” The legislative purpose throughout the act was obviously to liberalize procedure upon appeals and to prevent technicalities from being fatal to substantive rights. This purpose expressly appears in the language of Section 12223-5, General Code, that “the notice of
 
 *116
 
 appeal may be amended by the appellate court in the furtherance of justice for good cause shown.” This court has stated in
 
 Capital Loan & Savings Co.
 
 v.
 
 Biery,
 
 134 Ohio St., 333, 339, 16 N. E. (2d), 450, that the purpose of the notice of appeal is “to apprise the opposite party of the taking of an appeal. ” If this is done beyond danger of reasonable misunderstanding, the purpose of the notice of appeal is accomplished. The Court of Appeals may then permit the notice of appeal to be amended generally “in the furtherance of justice for good cause shown.”
 

 In the present case, the intention of the appellants was clear because their notice of appeal referred to a judgment rendered “upon the opening statement of said appellants.” The statute does not require that the judgment appealed from be designated
 
 by date.
 
 Since there was but one judgment in the case and that upon “the opening statement” appellee could not have been misled. This judgment being final and appeal-able, there is no question here of a notice of appeal referring, by date or otherwise, to an order which was not a final order. The present procedural question arises only because the final judgment, clearly referred to by the appellants and readily understandable by the appellee, was referred to as a judgment of the
 
 13th
 
 of November instead of the
 
 14th
 
 of November. The art of jurisprudence should find expression in the closeness to absolute justice achieved, rather than in the refinements of procedural technique required. The type of error in the present notice of appeal, we hold to be subject to correction by amendment permitted “in the furtherance of justice for good cause shown.” The Court of Appeals was correct in so ruling.
 

 The substantive question raised by this appeal is whether the plaintiffs, Couk and Spires, were insured by the policy issued by the defendant to All States Freight, Inc. This question, despite the complex and
 
 *117
 
 involved nature of the policy, calls merely for the application of accepted principles of construction to the terms, provisions and endorsements of the policy. It is true that Couk and Spires were not “named assured,” hut insuring agreement No. 7 of the policy provided as follows:
 

 “Additional Assured.
 

 “(7) The insurance granted by the foregoing provisions shall apply in the same manner and under the same conditions as it applies to the named assured, to' any person operating and/or to any other person while riding in and/or
 
 to any other person, firm or corporation legally responsible for the operation of, any motor vehicle described in the said declarations or for whom said motor vehicle is being operated, with the permission of the named assured *
 
 * *.” (Italics ours.)
 

 Couk and Spires claim to he within the italicized provision above. The truck in question, however, was not described in the aforesaid “declarations.” If it be assumed that this truck was being operated with the permission of the named assured, the next question becomes whether, within the terms of the insurance contract, there was any substitute for a description of the particular truck. Such substitute is found, we believe, in the following two endorsements of the policy:
 

 “Ohio Compulsory Insurance Law Endorsement No. I.
 

 “In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby
 
 waives a description of each automobile to be insured thereunder and agrees to pay,
 
 within the limits of the policy,
 
 any final judgment for personal injury, including * * * damage to property, caused by any and all automobiles operated by the assured pursuant to a certificate of public convenience and neces
 
 
 *118
 

 sity issued by the Public Utilities Commission of Ohio
 
 # # #_>> (Italics ours.)
 

 “Endorsement Covering Persons and Property, Except Cargo.
 

 “* * * And the said company for the consideration aforesaid, by the policy of insurance to which this endorsement is attached, hereby insures and agrees to indemnify the insured during the term of said policy or any renewal thereof against loss sustained by reason of the death of, or injury to persons and for loss of or damage to property * * * resulting from the negligence of the insured * * *
 
 while operating as a common carrier, the motor vehicle or vehicles, trailer or trailers, enumerated in the schedule or statements or any substituted or emergency vehicle, under and in accordance with a certificate of public convenience md necessity issued by the Public Utilities Commission of Ohio,
 
 notwithstanding, and in addition to, liability from risks of a different character, if any, provided for in said policy. # * *” (Italics ours.)
 

 These two endorsements expressly extend coverage to vehicles not specifically declared or described. In essence, the requirements of both endorsements are the same, to wit: Insurance is extended to cover any vehicle (or, in the second endorsement, any substituted or emergency vehicle) operated under and in accordance with a certificate of public convenience and necessity issued by the Public Utilities Commission of Ohio. If these requirements are not found to be met, the policy would insure
 
 no one
 
 with respect to the operation of an undescribed vehicle. The truck of Couk and Spires was not described, but in many ways the defendant has admitted that
 
 All States Freight, Inc.,
 
 was insured
 
 as to this truck
 
 at the time of the accident. This is admitted in the defendant’s brief in this court. It is admitted in the act of the defendant in paying voluntarily the New York judgment upon the
 
 *119
 
 child’s claim against All States Freight, Inc. The same admission is implicit in the defendant’s counterclaims asserted against Couk and Spires on the ground of alleged subrogation because of the payment upon behalf of All States Freight, Inc., of the aforesaid New York judgment. Such claim of subrogation necessarily implies that the defendant is asserting that it paid the judgment because its contract so required, that is, because All States Freight, Inc., was insured
 
 as to this truck.
 
 And, finally, the defendant in its answer admits that the truck of Couk and Spires was hired as “emergency or substituted equipment”— practically the language of the above quoted “Endorsement Covering Persons and Property, Except Cargo.” So being within the scope of the two quoted endorsements, the truck of Couk and Spires, hired by All States Freight, Inc., was one as to which the description was “waived” by force of the terms of the first of these endorsements. The description of their truck having thus been waived, Couk and Spires become “additional assured” under the terms of insuring agreement No. 7., because they were “legally responsible” for the operation of the truck, as is amply demonstrated by the New York judgments against them.
 

 Although the foregoing analysis reaches the conclusion that the truck was operated under and in accordance with a certificate of public convenience and necessity issued by the Public Utilities Commission of Ohio,
 
 within the mecming of this contract of insurance,
 
 there is not here involved any question of the power or authority of the Public Utilities Commission to require insurance coverage
 
 outside
 
 Ohio. The question here is the meaning of the contract actually entered into by the parties, who, regardless of the limits of authority of the commission, might choose, as they here did, to contract for out-of-state coverage. Such natural desire to have all insurance in a single policy of
 
 *120
 
 blanket coverage, instead of a separate policy for each state, is clearly indicated by the general provision in the body of the policy providing for insurance “as respects accidents occurring within the United States of America and Dominion of Canada.” It is here decided merely that the operation of Couk and Spires’ truck fell within the conditions of the parties’ contract and that the requirements of the two endorsements of the policy referred to above were satisfied and resulted in the identification of the plaintiffs’ truck as within the coverage of the policy. The coverage outside Ohio is by force of the terms of the policy, and not by reason of any extra-territorial power of the Public Utilities Commission of Ohio.
 

 The foregoing conclusion that Couk and Spires were included in the coverage of the policy is reinforced, moreover, by the general intention of the parties as evidenced throughout the policy, viewed in the light of the circumstances surroufiding the trucking business of All States Freight, Inc. First, it appears from the reeord of the New York litigation that All States Freight, Inc., passed on to Couk and Spires a pro rata portion of the premium burden of this insurance— $3.76 being deducted from the commission of Couk and Spires for public liability insurance for this trip. If the plaintiffs thus bore, in part, the burden of the premium, it would seem that All States Freight, Inc., intended that they should be insured and thus receive part of the benefit of the premium they paid. And, the plaintiffs in their dealings with All States Freight, Inc., understood that they were to be fully protected by insurance, for which a deduction was made from their commission. Second, it is apparent that the policy and both parties to it contemplated the use of hired trucks by All States Freight, Inc., since opposite each of the 28 motor trucks specifically described in the multiple provisions of the policy there appears the name
 
 *121
 
 of a different individual. Further, it was provided in one of the clauses of the policy that:
 

 “It is understood and agreed that the name of the assured is as follows: The All States Freight, Incorporated,
 
 and/or any individual whose name appears opposite a particular automobile as respects such automobile only *
 
 * V’ (Italics ours.)
 

 Also, a related provision of the policy with regard to adjustment of premium reads:
 

 “It is further agreed that for the purpose of computing the premium for this policy the assured shall at the inception thereof, furnish the company with a list of automobiles operated by him on such date, under the certificate of public convenience and necessity,
 
 and shall submit to the head office of the company at the end of each month a report of all automobiles added to or subtracted from said list, including hired automobiles,
 
 The company shall upon submission of such monthly reports adjust the premium * * (Italics ours.)
 

 Clearly the contracting parties intended to insure the owners of the hired trucks with which, it was realized, All States Freight, Inc., did its trucking business, whether such trucks were specifically listed or were substituted equipment not added to the list until the end of each month.
 

 We conclude, therefore, that, from the provisions of the two endorsements examined and discussed above, and from the reinforcing intention of the contracting parties, as clearly appears in the scope and purpose of the policy and in the actions and course of dealing between the parties, the policy in question insured the plaintiffs, Couk and Spires, with respect to the operation of their truck at the time of the accident.
 

 There remain, undisposed of, three contentions made in the brief of counsel for the defendant.
 

 First. It is argued that the truck of Couk and
 
 *122
 
 Spires was not operated with “the permission of the named assured” as required by the terms of the above-quoted insuring agreement No. 7. Counsel argue that “permission” means the consent of one legally empowered to prohibit the operations of the vehicle involved, and, since Couk and Spires owned the truck, no one else could so “permit” its operation. But as the truck of Couk and Spires was “hired” by All States Freight, Inc., we believe it is fanciful to say that its operation was not “with the permission of the named assured.”
 

 Second. Contention is further made that the Court of Appeals erred by including in the award to Couk and Spires the amount of the New York judgment against them, which they have not yet paid. Couk and Spires, however, were indemnified against
 
 liability
 
 as distinguished from indemnity merely against
 
 loss,
 
 because as “additional assured” they were entitled to the benefit of insuring agreement No. 1, wherein the company agrees “to pay all sums which the assured shall become
 
 liable to pay
 
 for damages (either direct or consequential) imposed by law on account of bodily injuries.” Had this obligation been performed by the defendant, the outstanding New York judgment would have been discharged. The amount of such judgment was therefore a proper element of damages caused by the breach of the contract of insurance.
 

 Third. As to the defendant’s counterclaims based upon its payment of the $14,691.74 New York judgment rendered jointly against Couk and Spires and All States Freight, Inc., it is clear that no recovery can be had by the insurer upon any counterclaim arising out of the very risk against which the plaintiffs, Couk and Spires, are here held to have been insured.
 

 Therefore, because the truck of the plaintiffs was a “vehicle,” express description of which was waived according to the endorsements of the policy, and be
 
 *123
 
 cause the plaintiffs, being “legally responsible” for the truck’s operation, became “additional assured” within the meaning of insuring agreement No. 7, we hold that plaintiffs were entitled to recover the amount of their liability upon the unpaid New York judgment and their expenses in the New York litigation in the stipulated amount of $3,000 plus interest and costs.
 

 The judgment of the Court of Appeals is therefore correct, and it is hereby affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Turner, Williams, Matthias, Hart and Zimmerman, JJ., concur.