## STATE v BROWN

Ohio Appeals, 2nd Dist, Franklin Co

No 3322. Decided June 10, 1941

Ralph J. Bartlett, Prosecuting Attorney, Columbus; Forrest F. Smith, Columbus; Henry Holden, Columbus; E. B. Paxton, Columbus, Asst. Prosecuting Attorneys, for plaintiff-appellee.

Charles Schwenker, Jr., Columbus, and Walter Page, Columbus, for defendant-appellant.

## OPINION

By GEIGER, PJ

The defendant was jointly indicted with one James Irby for burglary of a noninhabited dwelling house and grand larceny. The usual allegations as to burglary are made. The defendant on trial was found guilty of burglary and larceny as he stands charged in the indictment, the value of the property being assessed at $10.00.

The only question presented for the determination of this Court is as to whether or not the State proved by the proper degree that the defendant "did forcibly break and enter the uninhabited dwelling house."

The defendant Irby plead guilty to burglary and larceny. The defendant Brown plead not guilty. It appears from the evidence that the apartment entered was at the time vacant. The time of the offense was laid as September 23, 1940. The indictment mentions certain jewelry, clothing and household furniture. During the trial of this defendant, the articles alleged to have been stolen were by amendment made to include a certain Lyric radio which was not originally mentioned in the indictment. Irby, co-defendant, after having plead guilty, testified to the effect that on a day preceding the 23rd of September, he, alone, entered the house, using force to break down the doors leading to the apartment; that he then took all the articles mentioned in the indictment except the radio, which, being too heavy for him to handle, he left for a future visit. On September 22nd, or perhaps the 21st, he contacted Brown, who was a pin boy at a bowling alley, and told him that he knew were they could get a radio. Thereupon Brown agreed to accompany him upon his expedition. They went to the apartment and made entry.

There is a divergence upon the part of the two as to just how they gained entrance, Irby claiming that they entered through a basement going up the inside stairway into a hall adjacent to the apartment from which hallway they entered the apartment. Brown, on the other hand, states that they gained entrance to the hallway adjacent to the apartment by going up an outside stairway. After having located the radio by the aid of lighted matches, they carried it down to the street where they had waiting an automobile driven by one Fred James, who had gone with them to transport the radio when be believed that it had been given to the men by a white lady. James having become suspicious that the radio was "hot", and the two men not accounting for it satisfactorily, he required them to remove it from his automobile and they thereupon carried it to the point where the policemen afterwards found it.

The sole question, as above stated, is whether or not there was a forcible breaking and entering by the defendant Brown. Brown and Irby are the only two witnesses as to the method in which access was gained.

We will glance over the evidence as briefly as we may to ascertain whether or not the State produced the requisite amount of evidence on the point in

question. A police officer testified that he interviewed Brown at police headquarters in the presence of Irby and others. Brown stated that he had entered into an agreement with Irby to go over and get the radio. He stated the door of the building in which the apartment was located on the second floor, was unlocked. Irby in the presence of Brown admitted that he had broken into the place in the daytime, in the middle of the week, and that he then broke open the door, went in and took all the various items, cut out the plumbing and committed other depredations; that on a Sunday night he made arrangements with Brown to go there on the following night to get the radio. Irby stated that on the night the door was not locked, he had **opened** the door, and had gone in and proceeded to the second floor.

Brown on the stand stated that at the house there was a stairway "or" something "you just come right out, out from the outside and go right on in and upstairs." He did not remember any doors being there; the place was open.

On cross-examination he stated that they went in in the rear and did not go into the basement or through a basement door, but went up the outside stairway; the door was on the inside of the upstairs; he did not remember how they entered the second floor apartment. "Just don't recall where the door was." He was only in one room, and that was the room in which he got the radio. He did not go through other rooms to get to that room. He went up the outside stairway through the rear door of the house. He just went into the room where the radio was. When he went up the back stairway he had to go through a door to get into the house. Irby went into the door first. He states positively that the house was open. He admitted that he had made the statement to the officer "I think the door was unlocked, unfastened or something; Irby went in first." He repeated a number of times that he had told the officer that the door of the house was open.

Brown was the last defense witness and at the conclusion of his testimony a motion for directed verdict was made and overruled. Irby was put on the stand by the state in rebuttal. He stated that they went in the back door and went through the basement (this contradicts the defendant Brown who stated they went up the outside stairway). Irby stated "we went on up the basement steps on upstairs to the second floor."

Upon inquiry he stated that they went into the apartment from the back, arriving at the second floor on an inside stairway. They had to go through two doors; arriving at the apartment they took the radio only. There was a door to the apartment. The court asked whether the door was locked or unlocked, to which the witness replied it was unlocked, it was open. The witness Irby further stated, in answer to interrogatories by the Court, that when he had been there, before returning for the radio he left the door open, and "all we had to do was walk in". The door of the apartment was also open. This door was not open the first time Irby was there. He opened it by forcing out a panel.

After this testimony the motion for a directed verdict was made and overruled and a verdict of guilty of burglary and larceny returned. Notice of appeal was given in the following language: "Now comes defendant Leon Brown and gives notice that the defendant herein will file a petition to review this conviction for burglary and larceny in the Court of Appeals of Franklin County." We are of opinion that this form of notice of appeal is not correct according to the statute, but since the opinion of the Supreme Court in **Mosey v Heistand, 138 Oh St 249**, decided May 14, 1941, Ohio Bar Report May 19, 1941, in which it was held notice of appeal may be amended, that it would be idle for us to dismiss the appeal for lack of proper notice, as apparently under the case cited great liberality must be given for the correction of notices of appeal which have been improperly given by counsel. See

also **Capital Loan & Savings Co. v Biery, 134 Oh St 333; Couk et v Accident & Guaranty Corp., 138 Oh St 110.**

The appellant states six assignments of error, all going to the question of the weight of the evidence and the refusal of the court to grant a directed verdict, and refusal of the Court to give two special charges, and a criticism of the court's charge. The refusal of the court to grant the motion for a directed verdict is amply ██ justified in that the defendant was indicted for burglary and larceny and he admitted the petit larceny. In order to invoke the ruling of the court the motion should have been directed solely to the charge of burglary and possibly to that of **grand** larceny, but having admitted that he was guilty of petit larceny the court was in no position to direct a verdict of not guilty.

The other assignments of error are argued pro and con by the parties.

We have already quoted the statute and will call attention to only one case, that of **Goins v State, 90 Oh St 176,** wherein it is stated,

"Where any force, however slight, is required to effect an entrance into a building through a doorway partly open, such act constitutes a forcible breaking under §12413."

On page 182, Newman, J., delivering the opinion of the court states in substance, in the case under consideration, if the door of the chicken house was 'further opened in order to make the opening sufficiently wide to admit the plaintiff in error—and this was a question for the jury—unquestionably some force was required, and, however slight it may have been, it was all that was required to constitute a forcible breaking under the statute, and taken with other facts established, made a case of burglary.

The police officer stated that Irby stated to him in the presence of Brown, "The door was not locked, he had opened the door and proceeded to the second floor." This statement has reference to the door by which access was had to the stairway that lead to the hallway adjacent to the apartment. If that outer door was opened ever so slightly when Irby and Brown had access to the building, even though it was access to a basement not used in connection with the second floor apartment, the act of breaking and entering was complete. There seems to be a lack of a persistent pursuit by the State, to determine whether a door was opened by any one on the second night. The attorneys lead up to the question of doors through which the parties entered the apartment, but in none of these inquiries or by other testimony, do they elicit the fact that a door was opened. Irby, outside of the statement to the officer above alluded to, states persistently that he had left the doors open after his first visit, and that all they had to do was to walk in. This, of course, was supported by Brown. The testimony is decidedly suggestive of the fact that both Irby and Brown were aware of the importance to Brown of the lack of any breaking. Irby had plead guilty to a daylight entry of the house and the carrying away of the property. In his testimony he leaves an unobstructed passageway from the apartment to the outside, leaving all doors open and he testifies that upon returning with Brown they were still open. This is unusual and unnatural, but nevertheless in a criminal case the jury can not infer that a state of facts exists which is not supported by proof or by proof of circumstance. There was some evidence given by Miss Jane Wilson, the custodian of the property to the effect that she frequently drove out and looked at the property from the outside, but at no time near to September 23rd did she enter the property to make an examination, her examination being instigated only by the report of the radio having been stolen.

We are of the impression that the State has failed in its obligation to prove beyond a reasonable doubt that there was a breaking.

We find no other assignments of error prejudicial to the defendant.

The judgment of the Court below finding the defendant guilty of burglary will be reversed and the cause remanded for new trial, or for sentence under conviction of the offense of petit larceny if Prosecuting Attorney does not elect to retry.

BARNES and HORNBECK, JJ., concur.