The STATE of Ohio,

v.

BURNETTE, Appellee.

[Cite as *State v. Burnette* (1998), 125 Ohio App.3d 278.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18347.

Decided Jan. 14, 1998.

280

*Maureen O'Connor,* Summit County Prosecuting Attorney, and *Philip D. Bogdanoff,* Assistant Prosecuting Attorney, for appellant.

*Donald J. Malarcik, Jr.,* for appellee.

DICKINSON, Presiding Judge.

The state has appealed from an order of the Summit County Common Pleas Court denying its request *in limine* to receive into evidence excited utterances and statements to a physician made by an alleged victim of rape and gross sexual imposition. The state has argued that (1) the trial court incorrectly determined that the alleged victim was not competent to testify, (2) the trial court incorrectly ruled that the alleged victim's out-of-court excited utterances were inadmissible because she was "fundamentally incompetent," and (3) the trial court incorrectly ruled that the alleged victim's out-of-court statements to her treating physician were inadmissible because she was "fundamentally incompetent." This court affirms in part and reverses in part the judgment of the trial court and remands this cause for further proceedings because (1) the issue of the trial court's determination that the alleged victim was incompetent to testify is not properly before this court because no notice of appeal from that determination was filed, (2) the trial court had insufficient evidence before it to determine whether the alleged victim's excited utterances were inadmissible based on "fundamental incompetence," and (3) the trial court had insufficient evidence before it to determine whether the alleged victim's statements to her treating physician were inadmissible based on "fundamental incompetence."

I

Defendant Earl Michael Burnette was a friend of the Sigmund family and was visiting at their home on July 30, 1996. Shortly before 10:00 p.m., defendant asked Mrs. Clara Sigmund if he could take her daughter, Ms. Brenda Sigmund, to a store two blocks away to buy candy and beverages. Ms. Sigmund was a thirty-year-old mentally retarded woman. Mrs. Sigmund consented, and the two left. Ms. Sigmund's brother, Michael Sigmund, arrived home at 10:20 p.m., to find Mrs. Sigmund beginning to worry because Ms. Sigmund and defendant had not returned. Mr. Sigmund went to the store and, failing to find his sister and

defendant, returned home and left again in his car to search for them. He drove around the neighborhood calling out his sister's name, and eventually found defendant walking alone near a park. According to his testimony at the competency hearing, Mr. Sigmund asked defendant where Ms. Sigmund was, and defendant allegedly "grunted" and motioned toward the park. Mr. Sigmund then saw Ms. Sigmund walking out of the park toward home and noticed that she looked nervous, her clothes were wrinkled, and her hair was in disarray. He drove her home. During the drive, he asked her, "What's going on?" and she allegedly said, "Mike tried messing with me." Mrs. Sigmund testified that, after Ms. Sigmund returned home, she seemed nervous and scared, and her clothes were wrinkled and dirty. She allegedly said, "Mom, he fooled around with me," and, when Mrs. Sigmund asked where, Ms. Sigmund pointed to her pelvic area. Ms. Sigmund also allegedly indicated to her mother that she was in some pain or discomfort in that area.

Mr. Sigmund called the police, who came and took statements. Ms. Sigmund allegedly told an officer that defendant had taken her to the park, pulled her to the ground, and touched her in the chest and pelvic areas. At the suggestion of the police, Mr. Sigmund and his mother took Ms. Sigmund to a hospital that night, where she was examined by a physician. The next morning, according to Mr. Sigmund, defendant called him and apologized, saying that "everybody makes mistakes."

On August 15, 1996, defendant was indicted on two counts of rape, violations of R.C. 2907.02(A)(1)(c), and one count of gross sexual imposition, a violation of R.C. 2907.05(A)(5). There was a later supplemental indictment that charged him with three additional counts: one count of rape, one count of gross sexual imposition, and one count of felonious sexual penetration, a violation of R.C. 2907.12. The first indictment was eventually dismissed, leaving defendant to face only the three charges in the supplemental indictment.

On September 12, 1996, defendant moved for a competency hearing. The trial court issued an order on November 4, 1997, in which it determined that Ms. Sigmund was not competent to testify. On November 27, 1996, the state filed a request *in limine* for the court to rule that it would receive into evidence Sigmund's excited utterances and statements she made to her treating physician at the hospital. On December 12, 1996, the trial court denied that motion, "pending final ruling at trial." The state attempted to file an appeal from that order pursuant to R.C. 2945.67 and Crim.R. 12(J). This court dismissed that attempted appeal for lack of a final, appealable order because of the language in the order suggesting that the ruling might change at trial. The state moved the trial court for an order amending the December 12, 1996 order by removing that language, and the trial court filed an order granting that motion on February 14,

1997. The state timely appealed from that order and, as required by Crim.R. 12(J), certified that the denial of its request *in limine* effectively destroyed its case and that the appeal was not taken for purposes of delay.

## II

### A

The state's first assignment of error is that the trial court incorrectly determined that the alleged victim was not competent to be a witness. The state instituted this appeal pursuant to Crim.R. 12(J). To appeal an order of the trial court pursuant to that rule, the state must file a notice of appeal from that order within seven days and certify that the order destroyed its case. See Crim.R. 12(J). On September 12, 1996, defendant filed a motion for a hearing to determine Sigmund's competency. The motion was granted, and a hearing was held. On November 4, 1996, the trial court determined that she was incompetent to be a witness.

On November 27, 1996, the state filed a request *in limine* for the court to rule that it would receive into evidence Sigmund's excited utterances and statements she made to her treating physician under Evid.R. 803(2) and 803(4). On February 14, 1997, the trial court made a final determination that her excited utterances and her statements to her physician were inadmissible because she was "fundamentally incompetent." According to the state's notice of appeal, it appealed only from the order filed on February 14, 1997. In addition, the notice of appeal was filed more than three months after the November 4, 1996, order in which the trial court found Sigmund incompetent to be a witness.[1] The issue of the trial court's November 4, 1996 determination that Sigmund was incompetent to be a witness is, therefore, not properly before this court.

The state has argued that the lack of a notice of appeal from the November 4, 1996 order is not fatal to bringing that issue before this court for two reasons: it was unable to certify that the first ruling would destroy its case, as required by Crim.R. 12(J), and the entire case is before this court on appeal, not just what the state certified for appeal. First, the fact that the state could not certify the original finding of incompetency does not, as the state apparently believes, justify an untimely appeal of that finding. It simply means that the November 4, 1996

---

**1.** As mentioned above, the state first filed a notice of appeal on December 17, 1996, from a trial court order that denied the state's request *in limine* "pending final ruling at trial." This court dismissed that appeal for lack of a final, appealable order. The trial court, upon the state's motion, issued an order deleting the quoted words from the original order, and this appeal from the order as amended followed. Even in the first notice of appeal, however, there was no mention of any attempt to appeal from the November 4, 1996 order.

order was not appealable. Crim.R. 12(J) requires that an appeal pursuant to it must be from an order that effectively destroys the state's case, and must be filed within seven days of that order. The state has conceded in its brief that the original determination that Sigmund was incompetent to be a witness did not destroy its case.

Second, regarding the state's argument that it may challenge an order from which it did not directly appeal, it has cited two cases, one from this court and one from the Ohio Supreme Court. According to the state, in *State v. Zanders* (1997), 121 Ohio App.3d 131, 699 N.E.2d 117, this court "determined that the State may challenge a prior order of the trial court on appeal even when it did not directly appeal that order pursuant to Crim.R. 12." In *Zanders,* the defendant argued on appeal that the state had failed to appeal a pretrial ruling within seven days as required by Crim.R. 12(J). The trial court, however, had not foreclosed the state from using any specific evidence at trial by its initial ruling in *Zanders.* When, in a later ruling, the trial court did foreclose the use of specific evidence at trial, the state correctly appealed. To the extent that the order appealed was based upon findings included in the first unappealable decision, those findings were also before this court. Similarly, in this case, to the extent that the trial court's February 14, 1997 order is based upon findings included in its November 4, 1996 order, those findings are before this court. The unappealed and unappealable ruling that Sigmund was incompetent to be a witness, however, is not before this court.

The state has also cited *State v. Footlick* (1965), 2 Ohio St.2d 206, 207, 31 O.O.2d 411, 412, 207 N.E.2d 759, 760–761, for the proposition that "this court has jurisdiction of the entire case, not just the issue certified for appeal[.]" This court certified its decision in *State v. Footlick* to the Ohio Supreme Court because its opinion was in conflict with that of another court of appeals. The Supreme Court determined that a certification of a conflict by a court of appeals places an entire case before the Supreme Court:

"The question upon which this cause was certified to this court has meanwhile been determined adversely to the position taken by the Court of Appeals for Wayne County, in the case of *State v. Maynard* (decided December 29, 1964), 1 Ohio St.2d 57 [30 O.O.2d 32, 203 N.E.2d 332].

"* * * *

"However, 'certification of the record of a case to the Supreme Court because of conflict between judgments of Courts of Appeals upon any question, brings the entire case before the Supreme Court for review.' *Couk v. Ocean Accident & Guarantee Corp., Ltd.,* 138 Ohio St. 110 [20 O.O. 65, 33 N.E.2d 9]; *Pettibone v. McKinnon,* 125 Ohio St. 605 [183 N.E. 786]. Therefore, we consider the error additional to the error which was the basis of the certification, which error if well

made would justify the judgment of the Court of Appeals." *State v. Footlick, supra,* 2 Ohio St.2d at 207, 31 O.O.2d at 412, 207 N.E.2d at 761.

The "certification" in this case was a Crim.R. 12(J) certification by the state that an order of the trial court, if allowed to stand, will effectively destroy its case, not a certification of a conflict by a court of appeals. The state has cited no authority for applying the reasoning used by the Ohio Supreme Court in addressing conflict certification to a case involving Crim.R. 12(J) certification, and this court is not convinced that the same reasoning is applicable. The state's right to appeal in a criminal case is very limited. An order that is not appealable by the state does not become appealable by it because of the happenstance that the trial court issues a later order that is appealable by the state. The state's first assignment of error is not properly before this court. Therefore, it is overruled.

## B

The state's second assignment of error is that the trial court incorrectly ruled that the alleged victim's out-of-court excited utterances were inadmissible because she was "fundamentally incompetent." An excited utterance, which may be admissible as an exception to the general prohibition against hearsay evidence, is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). To qualify as an excited utterance and be potentially admissible pursuant to Evid.R. 803(2), a hearsay statement must satisfy four requirements:

" 'Such testimony as to a statement or declaration *may be* admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.' " (Emphasis sic.) *State v. Taylor* (1993), 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316, 320–321,

quoting *Potter v. Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, paragraph two of the syllabus.

In its November 4, 1996 order, the trial court determined that Sigmund was "not competent pursuant to Evid.Rule 601 and 603." In arriving at that conclusion, the court considered the five factors for determining the competency of child witnesses found in *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483, syllabus. Those factors were used because Sigmund's intellectual age was below ten years, and the *Frazier* factors were developed for children under ten. See *id.* The *Frazier* factors are (1) ability to receive accurate impressions of fact or observe the acts about which the child will testify, (2) ability to recollect those impressions or observations, (3) ability to communicate what was observed, (4) understanding of truth and falsity, and (5) appreciation of the responsibility to be truthful. *Id.* The court concluded that Sigmund "did not demonstrate an ability to receive accurate impressions of facts nor to recollect prior impressions or experiences" and that she "failed to demonstrate an understanding of truth and falsity and failed to demonstrate an appreciation of her responsibility to be truthful." In the court's explanation for its conclusions, however, it discussed only Sigmund's inability to recall events, her unresponsiveness to some questions, and her lack of understanding of the concepts of truth and falsity. The court did not discuss, or give examples of, Sigmund's inability "to receive accurate impressions of facts," and did not comment on her ability to communicate what she has observed.

In its December 12, 1996 order, the trial court found that, although the statements sought to be admitted met the test for excited utterances, and although testimonial incompetence did not bar admission of such statements, "fundamental incompetency to accurately observe and communicate experience in an intelligible, reliable manner" did bar admission of Sigmund's statements, regardless of any applicable hearsay exceptions. The court also cited *State v. Said* (1994), 71 Ohio St.3d 473, 644 N.E.2d 337, for the proposition that a child under ten must be found competent before any statements can be admitted under Evid.R. 807. Based on its finding of "fundamental incompetence," the trial court held that neither the excited utterances of Sigmund nor the statements she made to her treating physician were admissible.

As this court has recently noted, "while *State v. Said* held that a child must be found competent at the time a statement is made before the statement can qualify under any hearsay exception, the court excepted excited utterances from this general rule." See *State v. Street* (1997), 122 Ohio App.3d 79, 85–86, 701 N.E.2d 50, 54, citing *Said, supra,* 71 Ohio St.3d at 477, 644 N.E.2d at 340–341, fn. 1. See, also, *State v. Boston* (1989), 46 Ohio St.3d 108, 114, 545 N.E.2d 1220, 1227–1228, fn. 1, (excepting, among other kinds of statements, excited utterances

from the kinds of evidence that require a prior finding of competence under Evid.R. 601[A] ). Further, the holding in *State v. Said* relied upon by the trial court involved admissibility of statements under Evid.R. 807, a rule that explicitly requires a statement by an alleged child victim of sexual abuse to be supported by circumstances showing particular likelihood that the child was telling the truth when the statement was made. See Evid.R. 807(A)(1). There is no such requirement in the text of Evid.R. 803(2), the excited utterance exception. *State v. Said*, therefore, offers little guidance, if any, regarding the issue of excited utterance admissibility.

■ The admissibility of an excited utterance derives from its inherent high level of reliability, which results from dual grounds: "[F]irst, the stimulus render[ed] the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement [was] still fresh and intense." See *State v. Taylor, supra*, 66 Ohio St.3d at 300, 612 N.E.2d at 320. "Accordingly, Evid.R. 803(2) assumes that excited utterances are not flawed by lapses of memory or risks of insincerity." *Id.* It follows, therefore, that three of the *Frazier* factors, namely, ability to recall, understanding of truth and falsity, and understanding of the responsibility to be truthful, are not prerequisites for admission of an excited utterance, because those elements are accounted for in the qualification of a statement as an excited utterance. See *State v. Wallace* (1988), 37 Ohio St.3d 87, 94–95, 524 N.E.2d 466, 472–474.

The only remaining factors from *Frazier* for purposes of this issue, then, are Sigmund's ability to receive accurate impressions of fact and her ability to communicate what she observed. The trial court, in its December 12, 1996 order, found that Sigmund was "fundamental[ly] incompeten[t] to accurately observe and communicate experience in an intelligible, reliable manner" and that, therefore, none of her hearsay statements were admissible. The court did not explain in that order how it reached its conclusion that Sigmund could not accurately observe and communicate experience; it referred only to its prior finding that Sigmund was incompetent to testify, recharacterized that finding as "fundamental incompetence," and held that a finding of fundamental incompetence bars admission of hearsay statements, regardless of the exceptions under which they may fall.

■ Since there was no explanation in the December 12, 1996 order for the conclusion that Sigmund could not accurately observe and communicate experience, but merely a reference to the November 4, 1996 order, it is necessary to look to that earlier order for reasons underlying that determination. As mentioned above, there was also no explanation in that order for the trial court's conclusion that Sigmund did not demonstrate an ability to receive accurate impressions of facts, and no conclusion that she was unable to communicate her

impressions. The discussion focused only on her failure to demonstrate an ability to recall accurately, or communicate basic information about, the alleged attack; her unresponsiveness to some of the questioning; and her failure to demonstrate an understanding of truth and falsity and of her responsibility to be truthful. There appears to be no basis in either of the court's orders, therefore, for concluding that Sigmund could not receive accurate impressions of fact or communicate current impressions intelligibly.

There is, however, some testimony in the record suggesting that she was, in fact, able to accurately receive and intelligibly communicate impressions of fact:

"Q. Do you have any money on you now?

"A. I got it with me.

"Q. Let's see what you have.

"A. Okay. Dollar.

"Q. Okay. What I'd like to do is—

"A. What?

"Q.—take a look at your money.

"A. My hand's sweaty.

"Q. Okay. And I'd like to show the defense attorney as well. I'd like you to take a look at this, Brenda, and tell me what this is (indicating)?

"A. Penny.

"Q. Okay. And how much is that?

"A. One cent.

"Q. Okay. I'd like you to take a look at this and tell me what that is, (indicating)?

"A. Nickel.

"Q. And how much is that worth?

"A. Five.

"Q. Okay. I'm going to hand you this, you tell me if you know what that is?

"A. Dime. Ten.

"Q. Okay. How much is that worth? Okay. I'm going to hand you this, what is that, (indicating)?

"A. Quarter.

"Q. And how much is that worth?

"A. 5—25.

288

"Q. 25?

"A. Yes.

"Q. Okay. Now, you have a penny, a nickel, a dime and a quarter, can you point to me which one is the greatest, which one—

"A. The quarter.

"Q.—is worth the most? Okay. Which one is worth the least, the littlest?

"A. Penny.

"Q. Okay. Now I'm going to hand you this, could you tell us what this is, (indicating)?

"A. Dollar bill.

"Q. All right. Now, I'm going to put this down and you tell me what is worth the most?

"A. The dollar bill.

"Q. Okay. All right. Thank you.

"A. You're welcome.

" * * *

"Q. Okay. You have a watch on but you—

"A. Yeah.

"Q. What kind of watch is that?

"A. Mickey Mouse.

"Q. Okay. Can you tell us this, when you wake up in the morning, is it daytime or nighttime?

"A. Nighttime.

"Q. When you wake up in the morning?

"A. Oh, daytime.

"Q. What about when you go to sleep?

"A. Nighttime.

"Q. What's your favorite color?

"A. Blue.

"Q. What color is the sky?

"A. Blue.

"Q. What color is the grass?

"A.   Green.

"Q.   What color is the judge's robe?

"A.   Black.

"Q.   Okay.   What color am I wearing today?

"A.   Purple.

"Q.   Okay.   Do you know what color the American flag is?

"A.   Blue, red and white.

"Q.   Okay.   What's your favorite season?

"A.   Fall.

"Q.   And why is it your favorite season?

"A.   I don't know.

"Q.   What happens in the fall time?

"A.   Leaves fall off the tree.

"Q.   Do you like winter?

"A.   Yeah.   Do you?

"Q.   Okay.   Yeah.   What happens in the winter?

"A.   Snows.

"Q.   Is it cold or hot out?

"A.   Cold.

"Q.   Do you like summer?

"A.   Yes, I do.   Do you?

"Q.   Uh-huh.   Is it hot or cold?

"A.   Hot."

In addition, she was able to respond intelligibly to questions regarding ongoing or repetitive events in her life, such as what characterized the Christmas season for her, what she did at work, how she got to work, how she cashed her paychecks, and what kind of housework she did regularly.   There appears to be no support, therefore, for the trial court's conclusion that Sigmund could not accurately perceive and intelligibly communicate impressions of fact.   In contrast, there is at least some evidence in the record suggesting that she could accomplish these things.   Because the admissibility of excited utterances requires only these two factors from *Frazier*, it is necessary for the trial court to hear additional evidence of these two factors for the purpose of deciding the state's request *in*

*limine* to admit Sigmund's excited utterances. The state's second assignment of error is sustained.

C

The state's third assignment of error is that the trial court incorrectly ruled that the alleged victim's out-of-court statements to her treating physician were inadmissible because she was "fundamentally incompetent." The state, citing *State v. Miller* (1988), 43 Ohio App.3d 44, 46, 539 N.E.2d 693, 695–696, has argued that this court "has examined this exact issue and held that a child need not be competent in order for the statement to be admissible pursuant to Evid.R. 803(4)." Further, according to the state, the statements made by Sigmund to her treating physician met the requirements of Evid.R. 803(4) and those outlined by the Ohio Supreme Court in *State v. Dever* (1992), 64 Ohio St.3d 401, 596 N.E.2d 436. Neither of these cases, however, disposes of the issue.

In *State v. Miller, supra,* this court wrote that admissibility of a hearsay statement under Evid.R. 803(4) does not depend on a prior finding that the child is competent to testify pursuant to Evid.R. 601(A). This court did not hold, however, that there are no requirements for admissibility of such a statement. In this case, the trial court found Sigmund deficient in ways that would not only negate testimonial competence but would also destroy the reliability of statements made to a physician: namely, inability to receive just impressions of fact, inability to communicate impressions intelligibly, and inability to recollect past impressions or experiences. If that finding was correct, therefore, this court's holding in *Miller* would not render the statements admissible.

As this court concluded above, there was insufficient support in the record for the trial court's finding that Sigmund was unable to accurately perceive and intelligibly communicate impressions of fact, so her statements could not have been properly excluded on that basis. The only other relevant *Frazier* factor, her ability to recollect past experiences, was also not sufficiently explored for purposes of the admissibility of these statements. During the competency hearing, testing of Sigmund's ability to recall past events included questions regarding the alleged attack, which had taken place three months prior to the hearing; questions regarding whether she had ever hooked rugs; and questions about whether she had been in the courtroom prior to the hearing. She was unable to demonstrate an ability to recall these things fully and accurately. She could not provide much detail about the alleged attack, and apparently forgot that she had hooked rugs in the past and that she had been in the courtroom two weeks prior to the hearing. All of the questions testing her memory that she answered incorrectly, however, involved events that had taken place more than mere hours prior to the hearing. By contrast, the few questions that tested her

very short-term memory, *i.e.*, memory of the last several hours, involved how and by whom she had been brought to court that morning, and she apparently answered them correctly.

It is not surprising that there was little investigation of her very short-term memory during the competency hearing, since that hearing involved mainly the question of whether she would, at trial, be able to accurately recall and relate what happened on the night of the alleged attack. Sigmund made the statements to the physician, however, only a few hours, at most, after the alleged attack. If she was unable to remember events that happened weeks or months previously but did possess the ability to accurately recall events for at least several hours, she could not properly have been found, on the basis of inability to recall, to be so "fundamentally incompetent" that those statements were inadmissible. When the state filed its request *in limine* for the trial court to rule that it would receive into evidence the statements to the physician, therefore, a new issue was before the trial court, and the evidence that had been presented at the competency hearing was not sufficient to allow a determination of that issue.

Even if the trial court had had enough information to determine the types of competency issues that would affect admissibility of these statements, however, and even if it had then found that Sigmund was not incompetent in ways that precluded the admissibility of the statements, the statements would not have been automatically rendered admissible under *State v. Dever, supra,* 64 Ohio St.3d 401, 596 N.E.2d 436, as the state's argument implies. In fact, *Dever* would have required that the trial court hear even more evidence before making an admissibility determination.

█ The main safeguard for hearsay statements admitted under Evid.R. 803(4) is that, in going to a doctor, the declarant was likely motivated to seek medical diagnosis and treatment and, consequently, motivated to tell the truth to that doctor. See *State v. Dever, supra,* 64 Ohio St.3d at 409–411, 596 N.E.2d at 443–445. With young children, that initial motivational component tends to be weak or absent because they are usually taken to a doctor by an adult rather than via their own motivation to seek medical help, and they may not have the same appreciation as an adult would have of the value of being truthful with medical professionals. See *id.* at 409–410, 596 N.E.2d at 443–444. In *State v. Boston,* 46 Ohio St.3d 108, 545 N.E.2d 1220, the Ohio Supreme Court addressed this problem by essentially holding that, absent proof of personal motivation to seek treatment, a child's statements to a doctor cannot be admitted under Evid.R. 803(4). See *id.* at 121–124, 545 N.E.2d at 1233–1236. In *State v. Dever,* however, the Ohio Supreme Court modified its prior holding in *Boston:*

"The practical result of reading *Boston*'s rigid motivational requirement into Evid.R. 803(4) is that a young child's statements to a doctor in the course of a medical examination will virtually never be admissible under that rule.  * * *

" * * *

"While we recognize that a young child would probably not personally seek treatment, but would generally be directed to treatment by an adult, we do not find that the child's statements relating to medical diagnosis or treatment are always untrustworthy for that reason alone.   Once the child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment will normally be present.  * * * An overly strict motivational requirement for the statements of young children will almost always keep those statements out of evidence.   That is not an acceptable balance of competing interests.   We are unwilling to approve a rule which allows a person accused of abusing a young child * * * to keep the child's statements to a doctor out of evidence simply because of a lack of initial motivation to seek treatment.   In many situations, the statements of young children are sufficiently trustworthy and can appropriately be admitted pursuant to Evid.R. 803(4)."   64 Ohio St.3d at 409–410, 596 N.E.2d at 443–444.

The court went on to provide guidance for determining whether such statements should be received:

"The trial court should consider the circumstances surrounding the making of the hearsay statement.   If the trial court finds in voir dire that the child's statements were inappropriately influenced by another, then those statements would not have been made for the purpose of diagnosis or treatment.   This inquiry will vary, depending on the facts of each case.   For example, the trial court may consider whether the child's statement was in response to a suggestive or leading question * * * and any other factor which would affect the reliability of the statements * * * .   If no such factors exist, then the evidence should be admitted.   The credibility of the statements would then be for the jury to evaluate in its role as factfinder.   In addition, the witness whose testimony brings in the child's hearsay statement can be cross-examined about the circumstances surrounding the making of the statement.   But if the trial court discerns the existence of sufficient factors indicating that the child's statements were not made for the purpose of diagnosis or treatment, the statements must be excluded as not falling within Evid.R. 803(4)."   64 Ohio St.3d at 410–411, 596 N.E.2d at 444..

The Supreme Court's opinion in *Dever* requires a trial court to consider the circumstances surrounding the making of the statements.   It also points out that reliance of medical professionals on the statements in question must be considered, in addition to the declarant's motivation.   See *id.* at 411–412, 596 N.E.2d at

444–445. In this case, therefore, even if the trial court had heard further evidence regarding Sigmund's competence to make reliable statements to her physician (as this court has determined was necessary) and had not made the threshold determination that Sigmund's incompetence automatically precluded any consideration of those statements, this would not have ended the inquiry. The circumstances surrounding the making of the statements would still have had to be investigated before the trial court could have determined properly whether the statements were admissible under Evid.R. 803(4).

In conclusion, Sigmund's ability to accurately receive and intelligibly communicate impressions of fact, as well as her very short-term memory, must be more fully examined in order to determine whether she is, as the trial court found, so "fundamentally incompetent" that her statements to her physician were inadmissible under Evid.R. 803(4). If she is not found to be incompetent for that purpose, a *Dever* hearing or voir dire would then be in order to investigate the circumstances surrounding the making of those statements to determine their admissibility. The state's third assignment of error is sustained.

### III

The state's first assignment of error is overruled. Its second and third assignments of error are sustained. The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion, including the hearing of evidence as directed above for the purpose of deciding the state's request *in limine* for the court to rule that it will receive into evidence Sigmund's excited utterances and the statements she made to the physician at the hospital.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BAIRD and REECE, JJ., concur.